IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MOIRA CROWE, *on behalf of herself and* | : | |
| *all others similarly situated*, | : | |
| 380 Radford Court | : | |
| Glen Mills, PA 19342 | : | |
| | : | NO.: _____ |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | ***JURY TRIAL DEMANDED*** |
| KELLY SERVICES, INC. | : | |
| 999 West Big Beaver Road | : | |
| Troy, MI 48048 | : | |
| | : | |
| Defendant. | : | |

## COLLECTIVE AND CLASS ACTION COMPLAINT

Plaintiff Moira Crowe ("Plaintiff") hereby brings this action against Defendant Kelly Services Inc. ("Defendant") and alleges, upon personal belief as to her own acts, and upon information and belief as to the acts of others, as follows:

## NATURE OF THE ACTION

1.     Plaintiff brings this complaint contending that Defendant unlawfully failed to pay her and other similarly situated individuals employed in the position of Talent Advisor, or in positions with similar job duties ("Class Plaintiffs"), overtime compensation pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*. and the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. § 333.100, *et seq.*

2.     Plaintiff also alleges Defendant discriminated against her and terminated her employment because of her pregnancy, sex, need for maternity leave, actual and/or perceived disability, and record of impairment/disability as well as in retaliation for her requests for

reasonable accommodations, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, as amended by the Pregnancy Discrimination Act ("PDA"), 42 U.S.C. § 2000e(k), *et seq.*, the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*[1]

3.      Plaintiff is a former employee of Defendant who held the position of Talent Advisor II.  Plaintiff and Class Plaintiffs regularly worked more than forty (40) hours per week but were not properly compensated for their work in that Plaintiff and Class Plaintiffs were not paid an overtime premium at 1.5 times their regular rate of pay for all hours worked in excess of forty (40) hours in a workweek. In this regard, Plaintiff contends that Defendant unlawfully misclassified her and Class Plaintiffs as exempt employees under the FLSA and PMWA and failed to accurately track and pay them for all hours worked. Accordingly, Plaintiff contends that she and Class Plaintiffs are owed unpaid wages and overtime compensation, which were denied them as a result of Defendant's unlawful pay practices.

4.      Plaintiff brings this action as a representative action under the FLSA and PMWA for monetary damages and penalties, to seek redress for Defendant's willful, unlawful, and improper conduct.

## JURISDICTION AND VENUE

5.      This action is initiated pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.,* and Title VII of the Civil

---

[1] Plaintiff intends to amend this Complaint to add claims under the Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq.* ("PHRA") upon administrative exhaustion.

Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, as amended by the Pregnancy Discrimination Act ("PDA"), 42 U.S.C. § 2000e(k), *et seq.*

6.     This Court has jurisdiction over this matter pursuant to 29 U.S.C. § 216(b), which provides, in relevant part, that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction." See 29 U.S.C. § 216(b).

7.     Additionally, this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343, as it is a civil rights action arising under the laws of the United States.

8.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. 1367, as those claims arise out of the same common nucleus of operative facts as her federal claims.

9.     The venue in this district is proper to 28 U.S.C. § 1391, as Defendant does business herein and the unlawful practices of which Plaintiff is complaining were committed herein.

10.    On or about September 25, 2023, Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), which was dually-filed with the Pennsylvania Human Relations Commission ("PHRC"), thereby satisfying the requirements of 42 U.S.C. §§ 2000e-5(b) and (e).

11.    Plaintiff's EEOC Charge was docketed as EEOC Charge No. 530-2023-08623 and was filed within one hundred and eighty (180) days of the unlawful employment practice.

12.    By correspondence dated June 13, 2024, Plaintiff received a Notice of Right to Sue from the EEOC regarding her Charge, advising her that she had ninety (90) days to file suit against Defendant.

13.    Plaintiff filed the instant action within the statutory time frame applicable to her claims.

14.     Plaintiff has therefore exhausted her administrative remedies and has complied with all conditions precedent to maintaining this action.

## PARTIES

15.     Plaintiff Moira Crowe is a citizen of Pennsylvania and the United States with a current address of 380 Radford Court, Glen Mills, PA 19342.

16.     Defendant Kelly Services, Inc., is a for-profit corporation formed in Delaware with a principal place of business located at 999 West Big Beaver Road, Troy, MI 48084.

17.     Defendant is a "private employer" and covered by the FLSA, PMWA, FMLA, ADA, Title VII, as amended by the PDA, and PHRA.

18.     Plaintiff is a previous employee who was employed by Defendant during all relevant times hereto and as such, is an employee entitled to the protections of the FLSA, PMWA, FMLA, ADA, Title VII, and PDA.

19.     At all times relevant hereto, Defendant acted or failed to act through its agents, servants and/or employees thereto existing, each of whom acted at all times relevant hereto in the course and scope of their employment with and for Defendant.

## FLSA COLLECTIVE ACTION ALLEGATIONS

20.     Paragraphs 1 through 19 are hereby incorporated by reference as if the same were fully set forth at length herein.

21.     This action is brought as a collective action to recover unpaid overtime compensation, liquidated damages, unlawfully withheld wages, statutory penalties and damages owed to Plaintiff and all similarly situated current and former employees of Defendant.

22.     Pursuant to 29 U.S.C. § 216(b) of the FLSA, Plaintiff brings this action individually and on behalf of all other similarly situated persons presently or formerly employed by Defendant

in the position of Talent Advisor or in positions with similar job duties who were subject to Defendant's unlawful pay practices and policies described herein and who worked for Defendant at any point in the three (3) years who worked for Defendant at any point in the past three (3) years who were denied overtime compensation at their regular rate of pay for all hours worked over forty (40) in a workweek due to their misclassification as "exempt" under the FLSA and who were paid on a salary basis ("Class Plaintiffs").

23.    Plaintiff estimates that there are approximately one hundred and forty (140) to one hundred and fifty (150) other Talent Advisors who either were or are working for Defendant and were unlawfully denied overtime compensation for hours worked in excess of forty (40) in a workweek. The precise number of employees can be easily ascertained by Defendant. These employees can be identified and located using Defendant's payroll and personnel records. Potential Class Plaintiffs may be informed of the pendency of this Collective Action by direct mail and/or publication.

24.    Pursuant to 29 U.S.C. § 216(b), this action is properly maintained as a collective action because all the class members are similarly situated. Plaintiff and other similarly situated employees were similarly denied overtime compensation for hours worked in excess of forty (40) in a workweek, had the same or similar job classification and job duties, and were subject to the same uniform policies, business practices, payroll practices, and operating procedures. Further, Defendant's willful policies and practices, which are discussed more fully in this Collective and Class Action Complaint, whereby Defendant failed to pay Class Plaintiffs overtime compensation for all hours worked over forty (40) hours in a workweek, has affected Plaintiff and Class Plaintiffs in the same fashion.

25.     Plaintiff will request the Court to authorize notice to all current and former similarly situated employees employed by Defendant, informing them of the pendency of this action and their right to "opt-in" to this lawsuit pursuant to 29 U.S.C. § 216(b), for the purpose of seeking unpaid compensation, overtime compensation and liquidated damages under the FLSA.

## CLASS ACTION ALLEGATIONS

26.     Paragraphs 1 through 25 are hereby incorporate by reference as if the same were fully set forth at length herein.

27.     Plaintiff brings this action individually, and on behalf of the following state-wide class of similarly situated individuals, pursuant to Rule 23 of the Federal Rules of Civil Procedure:

> All persons presently or formerly employed by Defendant during the last three (3) years in the position of Talent Advisor or in positions with similar job duties who were denied overtime compensation for work performed in excess of forty (40) hours in a workweek due to their misclassification as "exempt" under the PMWA and who were paid on a salary basis ("Class Plaintiffs").

28.     The members of the class are so numerous that joinder of all members is impractical. Class members may be informed of the pendency of this Class Action by direct mail.

29.     Pursuant to Federal Rule of Civil Procedure 23(a)(2), there are questions of law and fact common to the Class, including, but not limited to:

A.     Whether Plaintiff and the Class are entitled to overtime compensation for services rendered in excess of forty (40) hours per week under the PMWA;

B.     Whether Defendant failed to accurately track and maintain records of the hours worked by Plaintiff and the Class.

C.     Whether Defendant improperly classified Plaintiff and the Class as exempt employees under the PMWA;

D.     Whether Plaintiff and the Class worked in excess of forty (40) hours per week;

E.     Whether Plaintiff and the Class have suffered and are entitled to damages, and if so, in what amount;

30.    Plaintiff's claims are typical of the claims of the Class members. Plaintiff is a former employee of Defendant who was employed in the position of Talent Advisor who has suffered similar injuries as those suffered by the Class members as a result of Defendant's failure to pay wages and overtime compensation. Defendant's conduct of violating the PWMA and FLSA has affected Plaintiff and the Class in the exact same way.

31.    Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff is similarly situated to the Class and has no conflict with the Class members.

32.    Plaintiff is committed to pursuing this action and has retained competent counsel experienced in class action litigation.

33.    Pursuant to Rules 23(b)(1), (b)(2), and/or (b)(3) of the Federal Rules of Civil Procedure, this action is properly maintained as a class action because:

A.     The prosecution of separate actions by or against individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual members of the Class that would establish incompatible standards of conduct for Defendant;

B.     Defendant, by failing to pay overtime compensation when it became due and owing, in violation of the PWMA, has acted or refused to act on grounds generally applicable to the Class, thereby making equitable relief appropriate with respect to the Class as a whole; and

C.     The common questions of law and fact set forth above applicable to the Class predominate over any questions affecting only individual members and a class action is

superior to other available methods for the fair and efficient adjudication of this case, especially with respect to considerations of consistency, economy, efficiency, fairness and equity, as compared to other available methods for the fair and efficient adjudication of the controversy.

34.     A class action is also superior to other available means for the fair and efficient adjudication of this controversy because individual joinder of the parties is impractical. Class action treatment will allow a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense if these claims were brought individually. Additionally, as the damages suffered by each Class member may be relatively small, the expenses and burden of individual litigation would make it difficult for the Class members to bring individual claims. The presentation of separate actions by individual Class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendant, and/or substantially impair or impede the ability of each member of the Class to protect his or her interests.

## <u>FACTUAL BACKGROUND</u>

### <u>Facts Pertaining to the Collective/Class FLSA/PMWA Claims</u>

35.     Paragraphs 1 through 34 are hereby incorporated by reference as if they were fully set forth at length herein.

36.     Plaintiff began her employment with Defendant in the position of Talent Advisor II on or about May 18, 2020.

37.     In their capacities as Talent Advisors, Plaintiff's and Class Plaintiffs' primary job responsibilities involved providing HR services to Defendant's clients such as facilitating onboarding, offboarding, and trainings for client employees; monitoring the attendance and time of client employees; monitoring the progress and performance of client employees, reviewing

payroll; ensuring legal compliance, conducting employee surveys; facilitating communication between Defendant's clients and their employees; and providing customer service to Defendant's clients.

38.     Plaintiff and, upon information and belief, Class Plaintiffs provided services for Defendant's clients across multiple time zones, which required extended hours of work and overtime.

39.     Plaintiff and, upon information and belief, Class Plaintiffs routinely worked over forty (40) hours per workweek.

40.     More specifically, Plaintiff and, upon information and belief, Class Plaintiffs typically worked an average of approximately forty-five (45) hours per workweek.

41.     For example, during the workweeks of September 12 through 16, 2022 and September 19 through 22, 2022, Plaintiff worked approximately forty-five (45) hours each workweek.

42.     Upon information and belief, Defendant instructed, permitted, or was otherwise aware that Plaintiff and Class Plaintiffs were frequently working more than forty (40) hours per workweek.

43.     However, upon information and belief, Defendant failed to accurately track and/or record the hours worked by Plaintiff and Class Plaintiffs.

44.     Despite regularly working over forty (40) hours per week, Plaintiff and Class Plaintiffs do not/did not receive overtime compensation for the hours they worked over forty (40) in a workweek.

45.     Defendant misclassified Talent Advisors as "exempt" from the FLSA and PMWA's overtime requirements.

46.     Yet there are no exemptions under the FLSA and/or PMWA that were applicable to Plaintiff or Class Plaintiffs.

47.     Plaintiff and Class Plaintiffs did not qualify for the Administrative Exemption because their primary duties did not include the exercise of discretion and independent judgment with respect to matters of significance.  Specifically, they lacked the authority to formulate, affect, interpret, or implement management policies or operating practices; to commit or bind Defendant in matters of significant financial impact; and to deviate from established policies and procedures without approval.  Rather, Plaintiff and Class Plaintiffs solely followed Defendant's specific instructions, standards, procedures, and guidelines in performing their job duties.

48.     Plaintiff and Class Plaintiffs did not qualify for the Executive Exemption because their primary duties did not involve managing Defendant or a department/subdivision of Defendant, and they did not regularly direct the work of two or more full-time employees of Defendant.

49.     Plaintiff and Class Plaintiffs did not qualify for the Outside Sales Exemption because their primary duties did not involve making sales or obtaining orders or contracts.

50.     There are no other exemptions under the FLSA and/or PMWA that are applicable to Plaintiff or Class Plaintiffs.

51.     Despite the fact that Plaintiff and, upon information and belief, Class Plaintiffs routinely work significantly in excess of forty (40) hours per workweek, Plaintiff and Class Plaintiffs do not/did not receive any overtime compensation for work performed in excess of forty (40) hours per week.

52.     Rather, Plaintiff and Class Plaintiffs were paid a fixed salary regardless of the number of hours they actually worked, even if they worked more than forty (40) hours in a workweek.

53.     Defendant unlawfully misclassified Plaintiff and Class Plaintiffs as "exempt" under the FLSA and PMWA and thus unlawfully disentitled Plaintiff and Class Plaintiffs from overtime compensation.

54.     Plaintiff and Class Plaintiffs are not exempt from receiving overtime compensation.

55.     Defendant failed to pay Plaintiff and Class Plaintiffs at a rate of 1.5 times their regular rate of pay for each hour they work in excess of forty (40) hours in a work week, in violation of the FLSA and PMWA.

56.     As a result of Defendant's aforesaid illegal actions, Plaintiff and Class Plaintiffs have suffered damages.

**Facts Pertaining to Plaintiff's Individual Title VII, PDA, ADA, and FMLA Claims**

57.     Paragraphs 1 through 56 are hereby incorporated by reference as though the same were fully set forth at length herein.

58.     Throughout Plaintiff's employment with Defendant, she performed her job well, receiving positive feedback of performance, occasional praise, and no justifiable discipline.

59.     In or around February 2023, Plaintiff advised her team and managers Addie Castro ("Ms. Castro") and Heidi Forester ("Ms. Forester") that she was pregnant and asked how to request maternity leave.

60.     On or about February 24, 2023, Defendant told Plaintiff to contact Defendant's third-party leave provider, Unum, to request maternity leave.

61.    Unam, however refused to process Plaintiff's request because Plaintiff did not yet have an exact start date for her leave.

62.    Shortly thereafter and as her prospective maternity leave approached, on or about March 28, 2023, Defendant abruptly terminated Plaintiff's employment, effective March 31, 2023.

63.    When advising Plaintiff of her termination, Defendant's Vice President, Nikki Green ("Ms. Green"), and Human Resources ("HR") Business Partner, Flora Sapressi ("Ms. Sapressi"), refused to provide Plaintiff with any information other than claiming it was a "business decision" and advising her that her termination was not part of any mass layoff.

64.    Notably, Plaintiff's maternity leave should have been protected under the FMLA.

65.    However, Defendant failed to advise Plaintiff of her rights and eligibility under the FMLA and prevented Plaintiff from taking FMLA leave.

66.    Accordingly, it is believed and averred that Defendant terminated Plaintiff's employment because she requested to take FMLA-qualifying leave and to deny Plaintiff FMLA leave.

67.    Additionally, it is believed and averred that Defendant terminated Plaintiff's employment because of her pregnancy, sex, and need for maternity leave.

68.    It must also be noted that in the months prior to her termination, Defendant refused to accommodate Plaintiff and subjected her to a hostile work environment because of her disability and her request(s) for accommodation, which factored into Defendant's decision to terminate Plaintiff's employment.

69.    For context, Plaintiff suffers from Anxiety Disorder, which renders her unable to use public restrooms.

70.    Until in or around March 2022, Plaintiff's disability did not impact her job with Defendant, as she had worked 100% remotely since the date of her hire.

71.    However, beginning in or around the end of March 2022, Defendant began requiring Plaintiff to report to work in-person.

72.    In or around May 2022, Plaintiff notified Ms. Castro of her disability and need for a reasonable accommodation.

73.    Specifically, Plaintiff requested to be allowed to use a private restroom at a different worksite location of Defendant, which was only ten (10) minutes away.

74.    Ms. Castro, however, inexplicably refused Plaintiff's request and instead told her to try a different on-site public restroom.

75.    This response did not address Plaintiff's actual needs for accommodation and only served to exacerbate her disability-related symptoms.

76.    In or around June 2022, Plaintiff contacted Defendant's HR department and again requested disability-related accommodations.

77.    In response, Defendant's HR Advisor, Susan Broschay ("Ms. Broschay"), provided Plaintiff with ADA paperwork to be completed by her medical provider.

78.    Plaintiff's doctor completed the paperwork, stating therein: "patient has significant anxiety. one way it presents is with an inability to use public restroom .... this can significantly impair her health and can become dangerous."

79.    Plaintiff's doctor further stated that Plaintiff "should be allowed to have access to a private restroom when needed. when she is on site where no private restroom is available, she can be there for no more than 3 hours at a time."

80.     Ms. Broschay thereafter emailed Plaintiff a schedule providing her with one single scheduled break in the morning to leave to use a private restroom and allowing her to leave the office premises in the late afternoon to complete the remainder of the day at home.

81.     Critically, however, this schedule did not provide Plaintiff the ability to use a private restroom "when needed," as Plaintiff's doctor indicated was necessary.

82.     Additionally, there were instances where Plaintiff was not able to take the scheduled morning break and thus was denied the ability to use the restroom until the late afternoon.

83.     Plaintiff complained on multiple occasions that this arrangement did not sufficiently accommodate her disability and that she needed additional accommodations in the form of private restroom breaks when needed.

84.     Defendant, however, refused to address these complaints and request(s).

85.     On or about September 14, 2022, Ms. Castro sent Plaintiff a detailed planner with scheduled in-person work tasks at pre-scheduled times.

86.     Defendant thus required Plaintiff be on-site at the scheduled time intervals, further preventing her from having access to a private restroom when needed.

87.     Plaintiff complained multiple times about the schedule exacerbating her disability and thwarting her accommodations.

88.     It was not until November 2022, after over six (6) months of refusing to properly accommodate her, that Defendant actually addressed her request(s) and complaint(s), allowing her to return to 100% remote work.

89.     Accordingly, it is believed and therefore averred that Defendant discriminated and retaliated against Plaintiff, subjected her to a hostile work environment, and terminated her

employment on the basis of her actual and/or perceived disabilities, her record of impairment, and in retaliation for her request(s) for accommodation, in violation of the ADA.

90.    As a result of Defendant's deliberate, willful, malicious, and unlawful actions, Plaintiff has suffered damages, including, but not limited to, loss of employment, promotion benefits, and other economic damages, and has also suffered mental anguish, emotional pain and suffering, emotional distress, humiliation, and damage to reputation.

**COUNT I**
**FAIR LABOR STANDARDS ACT ("FLSA")**
**29 U.S.C. § 201,** *et seq.*
**FAILURE TO PAY WAGES AND OVERTIME COMPENSATION**

91.    Paragraphs 1 through 90 are hereby incorporated by reference as though the same were fully set forth at length herein.

92.    Pursuant to Section 206(b) of the FLSA, all employees must be compensated for every hour worked in a workweek.

93.    Moreover, Section 207(a)(1) of the FLSA states that an employee must be paid overtime, equal to 1.5 times his or her regular rate of pay, for all hours worked in excess of forty (40) hours per week.

94.    According to the policies and practices of Defendant, Plaintiff and, upon information and belief, Class Plaintiffs routinely worked in excess of forty (40) hours per week.

95.    Despite working in excess of 40 hours per week, Plaintiff and Class Plaintiffs were denied overtime compensation for compensable work performed in excess of forty (40) hours per week. Defendant failed to pay Plaintiff and Class Plaintiffs at a rate of at least 1.5 times their regular rate of pay for each hour that they worked in excess of forty (40) hours in a workweek.

96.    The foregoing actions of Defendant and the policies and practices of Defendant violate the FLSA.

97.     Defendant's actions were willful, not in good faith, and in reckless disregard of clearly applicable FLSA provisions.

98.     Defendant is liable to Plaintiff and Class Plaintiffs for actual damages, liquidated damages, and other equitable relief, pursuant to U.S.C. 216(b), as well as reasonable attorneys' fees, costs and expenses.

**WHEREFORE**, Plaintiff prays for the following relief on behalf of herself and Class Plaintiffs:

A.     An Order from this Court permitting this litigation to proceed as a collective action pursuant to 29 U.S.C. § 216(b);

B.     An Order from this Court ordering Defendant to file with this Court and furnish to the undersigned counsel a list of all names and addresses of all employees who have worked for Defendant during the preceding three (3) years in the position of Talent Advisor and/or in positions with similar job duties, and authorizing Class Plaintiffs' counsel to issue a notice at the earliest possible time to these individuals, informing them that this action has been filed, of the nature of the action, and of their right to opt-in to this lawsuit if they worked for Defendant during the liability period, but were not paid overtime pay as required by the FLSA;

C.     Adjudicating and declaring that Defendant's conduct as set forth herein and above is in violation of the FLSA;

D.     Adjudicating and declaring that Defendant violated the FLSA by failing to pay overtime pay to Plaintiff and Class Plaintiffs for work performed in excess of forty (40) hours per week;

E.     Awarding Plaintiff and Class Plaintiffs back pay wages and/or overtime wages in an amount consistent with the FLSA;

F.      Awarding Plaintiff and Class Plaintiffs liquidated damages in accordance with the FLSA;

G.      Awarding Plaintiff and Class Plaintiffs reasonable attorneys' fees and all costs of this action, to be paid by Defendant, in accordance with the FLSA;

H.      Awarding pre- and post-judgment interest and court costs as further allowed by law;

I.      Granting Plaintiff leave to add additional Plaintiffs by motion, the filing of written opt-in consent forms, or any other method approved by the Court; and

J.      For all additional general and equitable relief to which Class Plaintiffs may be entitled.

**COUNT II**
**PENNSYLVANIA MINIMUM WAGE ACT OF 1968 ("PMWA")**
**43 P.S. § 333.100, *et seq.***
**<u>FAILURE TO PAY WAGES AND OVERTIME COMPENSATION</u>**

99.     Paragraphs 1 through 98 are hereby incorporated by reference as though the same were fully set forth at length herein.

100.    The Pennsylvania Minimum Wage Act provides that employers must pay certain "minimum wages," including overtime wages, to their employees. <u>See</u> 43 P.S. § 333.113.

101.    The Pennsylvania Minimum Wage Act further provides that "employees shall be paid overtime not less than one and one-half times the employee's regular rate" for hours worked in excess of forty (40) hours in a workweek. <u>See</u> 43 P.S. § 333.113.

102.    By its actions alleged above, Defendant has violated the provisions of the Pennsylvania Minimum Wage Act of 1968 by failing to properly pay overtime compensation to Plaintiff and Class Plaintiffs.

103.    Plaintiff and, upon information and belief, Class Plaintiffs routinely worked more than forty (40) hours per workweek, yet were denied overtime compensation.

104.    As a result of Defendant's unlawful acts, Plaintiff and Class Plaintiffs have been deprived of overtime compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, together with interest, costs and attorneys' fees pursuant to the Pennsylvania Minimum Wage Act of 1968.

**WHEREFORE,** Plaintiff prays for the following relief on behalf of herself and Class Plaintiffs:

A.    An Order certifying this case as a class action and designating Plaintiff as the representative of the Class and her counsel as class counsel;

B.    An award to Plaintiff and the Class for the amount of unpaid overtime compensation to which they are entitled, including interest thereon, and penalties subject to proof;

C.    An award to Plaintiff and the Class of reasonable attorneys' fees and costs pursuant to the PMWA; and

D.    An award to Plaintiff and the Class for any other damages available to them under applicable Pennsylvania law, and all such other relief as this Court may deem just and proper.

**COUNT III**
**FAMILY MEDICAL LEAVE ACT ("FMLA")**
**29 U.S.C. § 2601,** *et seq.*
**INTERFERENCE AND RETALIATION**

105.    Paragraphs 1 through 104 are hereby incorporated by reference as though the same were fully set forth at length herein.

106.    Defendant employed at least fifty (50) employees within the applicable seventy-five (75) mile radius for each working day in each of twenty (20) or more calendar days in the current or preceding year.

107.    Plaintiff was an eligible employee under the FMLA and was thus entitled to twelve (12) weeks of unpaid leave and/or intermittent leave for pregnancy and birth of a child.

108.    Plaintiff provided adequate notice to Defendant of her need for FMLA-qualifying maternity leave under 29 U.S.C. § 2612(e).

109.    Defendant willfully violated the FMLA by failing to inform Plaintiff of her rights under the FMLA, and by terminating her employment because she attempted to exercise her right to FMLA-qualifying leave and/or in retaliation for seeking FMLA-qualifying leave.

110.    Defendant willfully violated the FMLA by interfering with Plaintiff's FMLA rights and benefits and by denying Plaintiff FMLA leave.

111.    The aforementioned actions of Defendant constitute both interference and retaliation violations of the FMLA.

112.    As a result of Defendant's actions, Plaintiff has suffered loss of employment, earnings, raises, other significant economic benefits, emotional pain and suffering, emotional distress, and humiliation.

**WHEREFORE**, as a result of the unlawful conduct of Defendant, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, and grant her the maximum relief allowed by law, including, but not limited to:

A.    Back wages, front pay, and bonuses in an amount to be determined at trial, but not less than one hundred and fifty thousand dollars ($150,000.00);

B.    Liquidated damages;

C.    Plaintiff's costs, disbursements, and attorneys' fees incurred in prosecuting this action;

D.    Pre-judgment interest in an appropriate amount; and

E.      Such other and further relief as is just and equitable under the circumstances;

F.      Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth by applicable law.

**COUNT IV**
**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 ("Title VII")**
**AS AMENDED BY THE PREGNANCY DISCRIMINATION ACT ("PDA")**
**42 U.S.C. § 2000e, *et seq.*,**
**PREGNANCY / SEX DISCRIMINATION AND RETALIATION**

113.    Paragraphs 1 through 112 are hereby incorporated by reference as though the same were fully set forth at length herein.

114.    Plaintiff disclosed her pregnancy and need for maternity leave to Defendant.

115.    Defendant terminated Plaintiff because of her pregnancy and need for maternity, which is inherently connected to her sex.

116.    Defendant acted with malice and reckless indifference to Plaintiff's civil rights and emotional and physical wellbeing.

117.    Because of Defendant deliberate, unlawful, wanton, and malicious actions as set forth above, Plaintiff suffered damages in the form of, *inter alia*, loss of past and future wages and compensation, mental and emotional damages, damage to reputation, and personal humiliation, and loss of life's enjoyment.

**WHEREFORE**, as a result of the unlawful conduct of the Defendant, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant and grant the maximum relief allowed by law, including, but not limited to:

A.      Back wages and front pay, in an amount to be determined at trial, but no less than one hundred and fifty thousand dollars ($150,000.00);

B.    Punitive, compensatory, and/or exemplary damages in an amount to be determined at trial, but sufficient to punish Defendant for its intentional, negligent, willful, wanton, and/or malicious conduct;

C.    Plaintiff's costs, disbursements, and attorneys' fees incurred in prosecuting this action;

D.    Pre-judgment interest in an appropriate amount; and

E.    Such other and further relief as is just and equitable under the circumstances.

F.    Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of caps on certain damages as set forth by applicable law.

## COUNT V
## AMERICANS WITH DISABILITIES ACT ("ADA")
## 42 U.S.C. § 12101, *et seq.*
## DISCRIMINATION, HOSTILE WORK ENVIRONMENT, AND RETALIATION

118.    Paragraphs 1 through 117 are hereby incorporated by reference as though the same were fully set forth at length herein.

119.    Pursuant to the ADA, Plaintiff is a qualified individual with one or more disabilities.

120.    Plaintiff's Anxiety Disorder substantially limits her ability to engage in one or more major life activities.

121.    Defendant was aware of Plaintiff's disability and/or regarded Plaintiff as being disabled.

122.    Plaintiff requested disability-related accommodations from Defendant as well as reported workplace discrimination on the basis of her disability to Defendant.

21

123.    Defendant failed to accommodate Plaintiff, despite its ability to do so.

124.    Additionally, Defendant subjected Plaintiff to severe and pervasive differential treatment because of her actual and/or perceived disabilities, because of her past record of impairment, and in retaliation for requesting reasonable accommodation(s).

125.    Further, Defendant terminated Plaintiff's employment because of her actual and/or perceived disability and protected activity.

126.    Accordingly, Defendant violated the ADA.

127.    As a result of Defendant's deliberate, unlawful, and malicious actions as set forth above, Plaintiff has suffered loss of employment, earnings, raises, other significant economic benefits, emotional pain and suffering, emotional distress and humiliation.

**WHEREFORE**, as a result of the unlawful conduct of Defendant, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, and grant her the maximum relief allowed by law, including, but not limited to:

A.    Back wages, front pay, and bonuses in an amount to be determined at trial, but not less than one hundred and fifty thousand dollars ($150,000.00);

B.    Punitive, compensatory, and/or exemplary damages in an amount to be determined at trial, but sufficient to punish Defendant for its intentional, negligent, willful, wanton, and/or malicious conduct;

C.    Plaintiff's costs, disbursements and attorneys' fees incurred in prosecuting this action;

D.    Pre-judgment interest in an appropriate amount; and

E.    Such other and further relief as is just and equitable under the circumstances;

F.    Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages as set forth by applicable federal law.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issues so triable.

Respectfully submitted,

**MURPHY LAW GROUP, LLC**

By:    */s/ Jake Daniel Novelli, Esq.*
Jake Daniel Novelli, Esq.
Michael Murphy, Esq.
Murphy Law Group, LLC
1628 John F. Kennedy Blvd, Suite 2000
Philadelphia, PA 19103
TEL: 267-273-1054
FAX: 215-525-0210
jnovelli@phillyemploymentlawyer.com
*Attorney for Plaintiff*

Dated: September 10, 2024

## <u>DEMAND TO PRESERVE EVIDENCE</u>

The Defendant is hereby demanded to preserve all physical and electronic information pertaining in any way to Plaintiff's employment, to her potential claims and her claims to damages, to any defenses to same, including, but not limited to electronic data storage, employment files, files, memos, job descriptions, text messages, e-mails, spreadsheets, images, cache memory, payroll records, paystubs, time records, timesheets, and any other information and/or data which may be relevant to any claim or defense in this litigation